(No. 21586.—

THE TOWN OF KANEVILLE, Appellant, *vs.* LYLE B. MERE-DITH, Appellee.

*Opinion filed February 23, 1933—Rehearing denied April 6, 1933.*

FRED B. SHEARER, (WALTER R. O'MALLEY, of counsel,) for appellant.

A. G. KENNEDY, for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

January 28, 1929, appellant filed its bill in the circuit court of Kane county praying for an injunction to restrain appellee, his heirs, agents, servants and assigns, from in any manner interfering with it, its highway commissioner, agents, servants or employees from going upon or moving gravel from a 10-acre tract of land which appellant claimed to own. Appellee filed his answer and a cross-bill, claiming to be the owner and entitled to the possession of the premises in question and praying that his title therein might be quieted. The court, after a hearing, entered a decree finding that appellant was not entitled to the relief prayed for in its bill of complaint and establishing the title to the prem-

ises in appellee, "free, clear and disencumbered of all defects, clouds and apparent interests," and hence this appeal.

Appellee and appellant claim title from a common source, and it is agreed that on January 21, 1905, the title to the premises was vested in Ann E. Young, widow, and Frank P. Young and Mae Young, his wife. Appellant's chain of title consists of a warranty deed from the Youngs, dated January 21, 1905, to the Aurora Construction Company; a warranty deed from the Aurora Construction Company to the Aurora, DeKalb and Rockford Electric Traction Company, dated January 23, 1905; a deed from the special master of the circuit court of Kane county in a foreclosure proceeding against the Chicago, Aurora and DeKalb Railroad Company, to Israel Joseph, dated January 31, 1923; and a quit-claim deed from Israel Joseph and Mariam Joseph to Kaneville township—each of which deeds covered the premises in question and all subject to the condition contained in the deed of January 21, 1905, as follows: "It is further understood and is a part of the consideration for this conveyance that when the gravel upon the said property hereby conveyed shall be entirely removed, the said premises shall thereupon without further conveyance revert to the grantors herein their heirs and assigns, except a strip of land running through said premises one hundred (100) feet in width to be then designated by the grantee herein and its heirs or assigns, which said 100-foot strip shall not revert as aforesaid, but be retained by the said grantee and its heirs and assigns for railway purposes. All timber on said premises is expressly reserved by said grantors, who agree for themselves and their heirs and assigns, to remove the same so as to interfere in no way with the removal of gravel from said premises or the construction of railway tracks on or through the same."

It is to be noted that there is a missing link in appellant's chain of title, as, although the deed from the special master to Israel Joseph covers property, generally, of the

Aurora, DeKalb and Rockford Electric Traction Company, it does not appear from the record that that company was a party to the foreclosure suit or in what manner the Chicago, Aurora and DeKalb Railroad Company acquired any title to the premises in question. For all that appears in this record the title to the premises in question is still in the Aurora, DeKalb and Rockford Electric Traction Company.

Appellee's chain of title consists of a warranty deed from the Youngs to Charles E. Underwood, dated July 21, 1911, containing this clause: "This deed is made subject to a certain deed executed by Ann E. Young (widow) and Frank P. Young and Mae Young his wife, of the town of Kaneville, Kane county, Ill., and further referred to as document No. 73374, dated January 21, 1905, and recorded January 24, 1905, in book 451, on page 15 of the Kane county records at Geneva, Kane county, Ill.;" a warranty deed from Underwood and wife, dated March 19, 1924, to Lyle Meredith, conveying, with other land, the following described real estate: "The south 61 acres of the east half of the northeast quarter of section 25, township 39 north range 6, east of the third principal meridian, in the township of Kaneville, Kane county, Illinois, (excepting therefrom the right of way of the Aurora, DeKalb and Rockford Railway Company)." The south 10 acres of the above described tract is the real estate the title to which is in question in this suit. Appellee also claims title by adverse possession.

It is evident that appellee's record title to the premises is even more defective than that of appellant. Underwood's deed to him excepts therefrom the right of way of the Aurora, DeKalb and Rockford Railway Company, and the deed from the Youngs to Underwood was made six years later than their deed to the Aurora Construction Company and is specifically made subject to the former deed. No gravel was taken from the premises by the Aurora Construction Company or anyone claiming under it.

After the execution of the deed from the Youngs to the Aurora Construction Company they continued in possession of the land until the making of the deed to Underwood, and he remained in possession until the making of the deed to appellee. Just what the arrangement was between the parties as to such possession does not appear from the evidence. The evidence shows that there was no visible change of possession from what it was prior to the making of the deed to the Aurora Construction Company. Appellee claims title to the premises by reason of such possession. To establish title under section 1 of the Limitations act there must not only be twenty years' continuous and uninterrupted possession, but such possession must be hostile in its inception and so continue, must be visible, exclusive and notorious, and must be acquired and retained under claim of title inconsistent with that of the true owner, and all of these elements must concur. (*Clarke* v. *Clarke,* 349 Ill. 642.) Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal. (*Pullman Car Corp.* v. *Stroh,* 349 Ill. 492.) The presumption of the law is that the possession of real estate is subservient to the rights of the owner of the record title, and where the possession has been consistent with his title, nothing but a clear, unequivocal and notorious disclaimer and disavowal of the title of the owner will render the possession, however long continued, adverse to him. (*Pullman Car Corp.* v. *Stroh, supra.*) Where one claiming under the Statute of Limitations has acquired possession in subordination to the title of the owner of the fee or has remained in possession after making a deed of the premises to such owner, a clear and positive assertion of an adverse right showing a claim of ownership must be definitely brought to the knowledge of the title owner before any foundation can be laid for the running of the statute. (*Jacobi* v. *Jacobi,* 345 Ill. 518;

*Branch* v. *Central Trust Co.* 320 id. 432.) This means that the grantor in the deed, and those claiming under him, must prove possession showing some evidence of a claim of ownership different from that which they had prior to the making of the deed. Unless such is shown the Statute of Limitations does not begin to run, and it is impossible, therefore, that it ripen into title. No presumptions are indulged for the benefit of such title but in order that it ripen it must be hostile and adverse in its inception. In order to be hostile and adverse it must be under claim of ownership, hence possession which is not under claim of ownership in its inception cannot ripen into an adverse title. (*Jacobi* v. *Jacobi, supra; Joseph* v. *Evans,* 338 Ill. 11.) In the instant case not only is there a lack of proof that the possession of the Youngs was hostile in its inception to that of the Aurora Construction Company and its successors and assigns, but, on the contrary, the evidence shows clearly that it was not hostile, as in the deed from the Youngs to Underwood it was specifically stated that such deed was made subject to the prior deed to the Aurora Construction Company. The possession of Underwood was not hostile in its inception, as he took possession under a deed which did not purport to convey to him the entire title but specifically stated that it was subject to the deed to the Aurora Construction Company. At no time during the possession of either the Youngs or Underwood after the making of the deed to the Aurora Construction Company did either of them make any clear and positive assertion of an adverse right showing a claim of ownership which was definitely brought to the knowledge of the Aurora Construction Company, its successors or assigns. The Statute of Limitations, therefore, could not begin to run while the Youngs and Underwood were in possession.

Appellee could not avail himself of the fact that the Youngs and Underwood paid all the taxes assessed on the premises, for the reason that section 6 of the Limitations

act provides: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title." As neither the Youngs nor Underwood had any paper title which was not subject to that of the Aurora Construction Company, its successors and assigns, the payment of taxes made by them could not avail to start the running of the Statute of Limitations under section 6. Appellee had possession of the premises less than seven years prior to the beginning of the suit, and his paper title was subject to the right of way of the Aurora, DeKalb and Rockford Railway Company.

A principle recognized in all the cases is, that unless a party shows title to land in himself it is not for him to complain that there is a cloud upon it. He must have a title to the land to give him a standing in court before he can contest a cloud upon the title, whether it is created by an encumbrance or an adverse title. (*Hutchinson* v. *Howe,* 100 Ill. 11; *Ritchie* v. *Pease,* 114 id. 353; *Chicago Terminal Transfer Railroad Co.* v. *Barrett,* 252 id. 86; *Schottler* v. *Quinlan,* 263 id. 637; *Hooper* v. *Traver,* 326 id. 596.) Appellant having failed to show title in itself could not maintain its bill for an injunction, and appellee having failed to prove title in himself has no standing in court to have such title quieted.

The decree of the circuit court is reversed and the cause is remanded to that court.

*Reversed and remanded.*